Elaine W. Harbison, Petitioner *v.* Workmen's Compensation Appeal Board (Reuben H. Donnelley), Respondents.

Argued May 9, 1985, before Judges Doyle and Colins, and Senior Judge Barbieri, sitting as a panel of three.

*Alan H. Perer,* with him, *Michael F. Pillow, Swenson & Perer,* for petitioner.

*Michael D. Sherman,* with him, *Roy F. Walters, Jr.,* and *Joseph F. Grochmal, Fried, Kane, Walters & Zuschlag,* for respondent, Reuben H. Donnelley Corporation.

OPINION BY JUDGE COLINS, August 16, 1985:

This is an appeal by Elaine W. Harbison (claimant), the widow of Ralph J. Harbison (decedent), from a decision of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's denial of benefits to claimant under her fatal claim petition.

Decedent was employed by Reuben H. Donnelley, Company (employer), a distributor of telephone directories. His job required him to unload bundles of telephone directories from trailers in a parking lot to persons or vehicles on the ground for delivery. On December 3, 1979, decedent collapsed, breathing heavily, while in the process of unloading these directories. He was taken to St. Margaret Memorial Hospital (St. Margaret's) in Pittsburgh, Pennsylvania, where he was pronounced dead on arrival.

The referee found that decedent had a very severe atherosclerotic heart condition and that he had sustained a heart attack while in the course of his employment. However, the referee denied benefits because he concluded that decedent's heart disease and subsequent death were not work related. The Board affirmed the referee's decision. This appeal followed.

In heart attack cases, where the causal connection between work and injury is not an obvious one, the claimant bears the burden of establishing that link through unequivocal medical testimony. *Martino v. Workmen's Compensation Appeal Board (Signal Delivery Service),* 87 Pa. Commonwealth Ct. 154, 486 A. 2d 1038 (1985). Therefore, the proper standard should be whether, based upon a thorough review of the entire record, the medical testimony, taken as a

whole, was sufficiently unequivocal to support a finding for the claimant. *Haney v. Workmen's Compensation Appeal Board*, 65 Pa. Commonwealth Ct. 461, 442 A.2d 1223 (1982).

Our scope of review where, as here, the party with the burden of proof did not prevail below is limited to a determination of whether the findings of fact are consistent with each other and with the conclusions of law and whether they can be sustained without a capricious disregard of the competent evidence. *Gladys Supply Company v. Workmen's Compensation Appeal Board and Boyer*, 31 Pa. Commonwealth Ct. 64, 375 A.2d 401 (1977).

At the hearing before the referee, claimant introduced the testimony of Dr. Reidbord, Director of the Department of Pathology at St. Margaret's and Board certified in forensic pathology. Dr. Reidbord had performed the autopsy on decedent. He stated that: "[I]t is my opinion, expressed with a reasonable degree of medical certainty, that death was due to a cardiac arythmia [sic] secondary to atherosclerosis of the coronary arteries and that this arythmia [sic] was caused by or precipitated by the strenuous labor in which . . . [decedent] was engaged at the time of the final event."

Dr. Julian P. Levinson, Board certified in internal medicine and cardiovascular diseases testified for employer. Dr. Levinson's testimony, in pertinent part, was as follows:

Q. Doctor, do you have an opinion as to why . . . [decedent] died on December 3, 1979?

A. Yes, I think he had sudden cardiac failure.

Q. Doctor, what is sudden cardiac failure?

A. It's a sudden inability of the heart to pump blood.

Q. Okay. Doctor, do you have a further opinion as to whether or not there was any relationship between . . . [decedent's] work activity on December 3, 1979, and the sudden cardiac failure which you opined he died of?

A. Well, my opinion is this man obviously had severe arteriosclertic [sic] heart disease, and that at that particular time he apparently reached the point where the supply of oxygen to his heart muscle was inadequate, and the heart muscle failed. . . .

Q. Okay. Now, Doctor, is there any relationship between . . . [decendent's] work activity and the inducement of this sudden cardiac failure in your opinion?

A. Well, *I don't think* there is any direct relationship. *It's quite possible* that a person who is in the act of working and is putting more stress on his circulatory system, that at that time there wouldn't be enough. There would be a disparity between supply and demand of nourishment to his heart muscle. (Emphasis added.)

Q. But this doesn't have any relationship between the condition of his heart and the resultant death?

MR. PERER: I am going to object to the leading nature of the question.

MR. GROCHMAL: You can answer the question, Doctor.

THE WITNESS: There is no direct relationship between the work and his heart attack. . . .

Q. And likewise, there is no direct relationship between the work activity he was per-

forming and his death as a result of that sudden cardiac failure?

MR. PERER: Wait a minute. I want to object again in the nature of a leading question.

MR. GROCHMAL: You may answer the question, Doctor.

THE WITNESS: I think that one would have to make a supposition, because there is no way we can document a direct relationship between the work and the failure of the heart.

(Deposition of Dr. Levinson, pages 12-14).

The equivocality of Dr. Levinson's testimony was further demonstrated during cross-examination.

Q. So, Doctor, so I can understand this you are not saying today, within a reasonable degree of medical certainty, that there is absolutely no relationship between the work and the requirements that it may have put on his heart and the initiation of a heart attack? You are saying, as I understand it, that you are uncertain as to that relationship, is that correct?

A. *I am uncertain as to the relationship between the work he was doing that day and his sudden demise.* (Emphasis added.)

Q. Okay. And so your opinion is not—you are not saying within a reasonable degree of medical certainty that there is no relationship; you are only saying that your opinion is that *you are uncertain as to whether there is a relationship or not?*

A. *That's right.* (Emphasis added.)

(Deposition of Dr. Levinson, pages 18-19).

Furthermore, on redirect, in answer to the question of whether "[t]he actual physical labor . . . [decedent] was doing on the job, did . . . or did . . . not

have a direct relationship between that fatal arrhythmia which has been opined to be the cause of his death?'', Dr. Levinson stated that: He "ha[s] no way of establishing that.'' (Deposition of Dr. Levinson, page 25).

Dr. Levinson expressed three different opinions during his testimony regarding the issue of whether decedent's death was work related. First, he opined that decedent had severe atherosclerotic heart disease and that while he was working he apparently reached the point where the supply of oxygen to his heart muscle was inadequate and the heart muscle failed. When asked again whether decedent's death was work related, Dr. Levinson, stated that he *didn't think* there was any direct relationship. Then, after he was asked a leading question, the doctor finally testified that there was no direct relationship between decedent's work and his heart attack. Immediately after making the above statement, however, Dr. Levinson stated that there is no way we can documment a direct relationship between the work and the failure of the heart. During cross and redirect examinations, the doctor again stated that he was uncertain as to whether or not there was a relationship.

Dr. Levinson's inconsistent and equivocal testimony is also mirrored in the referee's following findings of fact:

25. [Dr. Levinson's] opinion is that there is no direct relationship between the decedent's work and his heart disease or his death.

27. This physician testified that he is uncertain as to whether there is a relationship between the . . . [decedent's] work and sudden demise.

32. Dr. Levinson, inter alia, is of the opinion that the available data, especially that from

the autopsy, are insufficient to base any finding as to whether or not the death was work related, and is of the opinion that the death was not work related.

The referee specifically found that the testimony of Dr. Levinson was competent and credible.

In discussing the conflicting testimony, the Board stated:

Clearly, claimant presented sufficient competent medical evidence in the form of Dr. Reidbord's expert testimony to support a finding that decedent's heart attack was work related. (See Dr. Reidbord's deposition especially page 12). On the other hand, defense (Company) presented legally sufficient competent medical evidence to support a finding that decedent's heart attack was not work related. (See Levinson deposition, pages 12-13). Although Dr. Levinson's deposition testimony is not as strong as Dr. Reidbord's, it is legally sufficient and competent to support the referee's findings in this regard.

It is in the latter conclusion that both the referee and the Board erred. Dr. Levinson's testimony was so equivocal that it cannot be considered competent. See *McPhillips v. School District of Philadelphia*, 40 Pa. Commonwealth Ct. 204, 396 A.2d 922 (1979).[1] In fact, if it were not for the two leading questions by defense counsel, Dr. Levinson's testimony would have almost corroborated that of the claimant's testifying physician.

---

[1] In *McPhillips*, we held similar medical testimony to be too equivocal to establish a causal connection between decedent's death and his work. There, the claimant's medical expert testimony was that decedent *probably* had angina pectoris which *could* have been precipitated by his work.

176

While it is true that the referee at these hearings has broad discretion as to evidentiary questions, he cannot allow counsel to literally place the sought-after "answers into the witnesses mouths". *Tomshuck v. Wallin Concrete Corporation,* 146 Pa. Superior Ct. 390, 395, 23 A.2d 74, 77 (1942).

A review of the entire record indicates that Dr. Reidbord's testimony was consistent, unequivocal, and competent while the only testimony presented by defendant was so inconsistent and equivocal as to be incompetent.

As such, the order of the Workmen's Compensation Appeal Board, dated December 17, 1983, is accordingly reversed and the claimant is awarded benefits.

ORDER

AND Now, this 16th day of August, 1985, the order of the Workmen's Compensation Appeal Board, Docket No. A-84285, dated December 15, 1983, is reversed and remanded to the Board with directions to enter an award of benefits to claimant.

Jurisdiction relinquished.